UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENNIE H., JR., | ) |
| Plaintiff, | ) No. 19-cv-3724 |
| v. | ) Magistrate Judge Susan E. Cox |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bennie H., Jr.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits. Plaintiff has filed a motion for summary judgment, which is fully briefed and ripe for disposition. As detailed below, Plaintiff's motion for summary judgment [dkt. 10] is GRANTED; the ALJ's decision is reversed and remanded for proceedings consistent with this Memorandum Opinion and Order.

I. **Background**

   a. **Procedural History**

Plaintiff was born in 1962. [Administrative Record ("R.") 147.] Plaintiff protectively filed for both Disability Insurance Benefits and Supplemental Security Benefits on October 13, 2016, alleging a disability onset date of February 22, 2016. [R. 61, 147-50.] Plaintiff was just shy of his 54th birthday on his alleged disability onset date. [R. 61, 147.] On July 20, 2018, after an administrative hearing (where Plaintiff was unrepresented by counsel), Administrative Law Judge ("ALJ") Gregory Smith issued an unfavorable decision. [R 61-68.] Plaintiff requested Appeals Council review, which was denied on October 10, 2018. [R. 74-76.] Thus, the Decision of the Appeals Council is the final decision

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

of the Commissioner. Plaintiff, through counsel, filed the instant action on June 4, 2019, seeking review of the Commissioner's most recent decision. [Dkt. 1.]

### b. The ALJ's Decision

On July 20, 2018, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 61-68.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 22, 2016. [R. 63.] At Step Two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease; diabetes mellitus; diabetic ophthalmic manifestations; and hypertension. *Id.* At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 63-64.] Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: he can occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; he can push/pull as much as he is able to lift and/or carry; he can sit, stand, and/or walk for six hours in an eight-hour workday; he can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; he can occasionally stoop, kneel, crouch, or crawl; and he is limited to reading ordinary newspaper or book print. [R. 64.] At Step Four, the ALJ found Plaintiff capable of performing his past relevant work as an electronics technician. [R. 67.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. *Id.*

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. A court's scope of review in these cases is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### III. Discussion

Among other things, Plaintiff asserts the ALJ's failure to address his hand impairment is grounds for remand. The Court agrees.

The Seventh Circuit decision in *Myles v. Astrue*, 582 F.3d 672 (7th Cir. 2009), strongly informs the Court's decision here. In *Myles*, the court reviewed a denial of disability claim where the ALJ failed to analyze key facts in regard to some of the claimant's symptoms, one of which was hand problems. *Myles*, 582 F.3d at 676. The VE in *Myles* made it clear that if the claimant's claims of hand tingling were true, she could not maintain employment. *Id.* The court noted, "regarding Myles's complaints of hand limitations, the ALJ simply did not perform any analysis that we can see." *Id.* Indeed, the ALJ in *Myles* apparently acknowledged the claimant's hand limitations, "but his analysis does not articulate his reasons for rejecting them, except to say there is no objective medical evidence to support them." *Id.* at 677. The Seventh Circuit also noted that the ALJ was required to analyze the claimant's hand limitations, even if there is no objective medical evidence to support such claims. *Id.* at 676-77 (citing *Young v. Sect'y of Health and Human Servs.*, 957 F.2d 386, 393 (7th Cir.1992); SSR 96–8p, *7). Thus, remand was required, in part, because the ALJ in *Myles* did not analyze the claimant's hand limitations

(and in doing so engaged in a "selective discussion of the evidence"), particularly in light of the VE's testimony that the claimant's hand limitations would be job preclusive if true. *Id.* at 676-78.

In the instant matter, Plaintiff testified at the Administrative Hearing about his hand limitations, discussing how two different treaters have noted his problems with contracture/ulnar claw and his being unable to fully extend his fingers from a claw shape. [R. 16-17.] In fact, Plaintiff was unable to take off his ring during X-rays because it won't come off when his fingers are bent. [R. 17-18.] Plaintiff testified that although he is able to complete some tasks requiring finger dexterity (*i.e.*, balancing a pen to sign his name or gripping and pulling a zipper), his clawing prevents him from doing many tasks requiring fine motor skills such as buttoning his clothes or tying his shoes, which his wife preforms for him. [R. 17, 23-24.] The clawing also prevents Plaintiff from typing on a keyboard with any accuracy [R. 23], which is presumably a key component of his prior work as an Information Services Specialist II (which the Court understands from Plaintiff's description of his job duties as fundamentally a computer IT department position [R. 14-15]).[2] Plaintiff is right-handed. [R. 24.] Plaintiff testified that the clawing is predominantly in his right hand, but it is moving over to the left. [R. 17.] He has to position himself to do everything with his left hand. [R. 24.] Plaintiff is still able to drive with his left hand, but he is extremely uneasy about it. [R. 25.] When asked by the ALJ which of his various medical issues (including, *inter alia*, lower back problems, diabetes, hypertension, vision issues) bothers him the most and which issue he desired to get rid of first, Plaintiff definitively stated he wished he "could get rid of [his] hand because it's turning into being deformed."[3] [R. 17.]

---

[2] Plaintiff described his Information Services Specialist II position as requiring him to "keep the web updates and help on the phone with problems that people had with their computer, and the people in the units around our office with problems with their computers. And I would install software on the hardware…[and sometimes] install the whole system [including] the monitor, the computer, the keyboard, and a mouse." [R. 14-15.] The VE classified Plaintiff's Information Services Specialist II title as an electronics technician position within the DOT (DOT # 003.161-014).

[3] Perhaps representative of the fact that his hand issues bothered him the most of all his ailments, Plaintiff described his hand issues and resultant limitations to the ALJ on 6 out of 16 pages of his testimony during the Administrative Hearing. Moreover, 3 of those pages of Plaintiff's testimony were basic background information before Plaintiff began describing his physical ailments.

The Record also contains non-subjective evidence concerning Plaintiff's hand issues. Plaintiff has a Worker's Compensation claim due to lifting a commercial printer at work, and he was seen twice by Dr. Christopher J. DeWald, MD, a physician retained by his employer in that Worker's Compensation case.[4] [R. 15, 21-22, 443-50, 887-90]. Dr. DeWald authored a January 6, 2017 Independent Medical Examination ("IME") [R. 443-50] wherein he states:

> I evaluated [Plaintiff's] upper extremities as well as he complained that his back pain was also causing some symptoms in the right upper extremity. He says everything in the right side was bad[. I]ndeed he has some clawing of his ulnar 2 digits in his right hand. He has weak grip strengths bilaterally, but worse the right versus the left. He has abduction and adduction weakness in bilateral hand, but has no change in sensation. He has 1+ biceps reflexes and brachioradialis reflexes and no reflexes in the triceps bilaterally. Biceps and triceps seem to be strong.

[R. 450.] Dr. DeWald did not feel Plaintiff was ready to return to work at that time. [R. 448.] There are also references to the contracture issues with Plaintiff's right hand within his physical therapy records in late 2017 and early 2018. [R. 821, 834, 841, 856, 864, 856.] Additionally, on November 29, 2017, Mr. Horton saw his treating physician, Dr. Cornelius Rogers, MD, for hand pain. [R 751.] Dr. Rogers referred Plaintiff out for X-ray imaging. [R. 753.] An imaging report from November 30, 2017, noted the contracture present and noted the studies were necessarily limited by the same. [R 747.] As remarked upon by the ALJ during the Administrative Hearing, a print of the X-ray shows the extent of the contracture on that date. [R. 17-18, 772.] A second IME [R. 887-90] done by Dr. DeWald on January 19, 2018 again found Plaintiff's work capabilities were "very limited due to his additional problems with his arm and his ongoing back and leg pain." [R. 889.] Dr. Dewald noted bilateral ulnar neuropathy during this second examination [R. 887], as well as Plaintiff's reported "difficulty doing even small chores" related in part to "his hand control" [R. 888]. With regard to Plaintiff's "significant upper extremity symptoms" as Dr. DeWald described them, he wrote in the second IME:

> He has had some loss of muscle as he was unable to do his normal workouts, etc., but again, what is most striking is the 1st dorsal interosseous wasting that he has in both

---

[4] Not only are both of Dr. DeWald's IMEs in the Administrative Record [R. 443-50, 887-90], but during the Administrative Hearing, Plaintiff specifically told the ALJ about the findings of Dr. DeWald's first IME. [R. 17.]

5

hands, but the right in particular. He has no abduction or adduction of his fingers very weak (sic). He can do it on his left, but unable to do it on his right and he [has] negative ulnar clawing on his right side.

[R. 888.]

Here, the ALJ's decision suffers from the same fatal flaw as *Myles* with respect to Plaintiff's hand limitations. However, it seems ALJ Smith's decision is even more faulty in that the ALJ does not even mention the word "hand" in his decision, much less offer a boilerplate "no objective medical evidence supports these limitations" statement. The Court does not agree that no objective medical evidence supports Plaintiff's hand limitations. In fact, as detailed above, a review of the record discloses that the ALJ indeed ignored substantial evidence contrary to his conclusions; Plaintiff exhibited clear hand limitations during his medical examinations and, thus, these relevant medical records appear to indicate Plaintiff's symptoms are objectively medically determinable.

But the ALJ may not simply ignore evidence, particularly a whole line of evidence as it appears the ALJ did here. *Myles*, 582 F.3d at 676 (citing *Lopez*, 336 F.3d at 540). "The reasons for rejecting evidence must be articulated if there is to be meaningful appellate review," particularly because "[t]he RFC must be assessed based on all the relevant evidence in the record." *Young v. Sect'y of Health and Human Servs.*, 957 F.2d at 393; *Young v. Barnhart*, 362 F.3d at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). Here, the ALJ provided no reasons for his wholesale failure to address Plaintiff's alleged hand limitations, despite them being such a significant impairment for Plaintiff that he told the ALJ he would choose to heal this impairment first from his constellation of medical issues and despite the fact the clawing impeded Plaintiff's medical providers from conducting full X-ray imaging studies. [R. 17, 747.] Additionally, as in *Myles*, the VE here testified that if there were hand limitations, the number of jobs would be greatly reduced or eliminated depending on the limitation. [R. 30-31.] Yet there is no mention in the ALJ's decision of any hand limitations. In short, the Court is baffled as to why the ALJ's opinion simply fails to address Plaintiff's hand limitations. Because of this failure, the

Court cannot meaningfully address the adequacy of the ALJ's review and assessment of this ailment, if indeed the ALJ gave any consideration to Plaintiff's hand limitations. As in *Myles*, "regarding [plaintiff's] complaints of hand limitations, the ALJ simply did not perform any analysis that we can see." *Myles*, 582 F.3d at 676. In light of the abundance of subjective and objective medical evidence relating to Plaintiff's hand impairments, the Court finds the ALJ's failure to address Plaintiff's hand impairments material to the decision and in need of remand for this analysis. As the ALJ's decision regarding Plaintiff's hand limitations could change the ALJ's determination of Plaintiff's disability status, upon remand the ALJ should clarify to what extent (if any) the record refutes Plaintiff's hand limitations.

Similarly, the ALJ wholly fails to address Dr. DeWald's opinions (who certainly offered impartial opinions in his IMEs, which were commissioned by the party potentially opposing Plaintiff's Worker's Compensation benefits), including, *inter alia*, about Plaintiff's back limitations and hand limitations, a remandable error as the ALJ has an obligation to consider all the medical opinions in the record. *Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)). On remand, the ALJ should also take care to address all medical opinions of record, including Dr. DeWald's.

**IV. Conclusion**

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 10] is GRANTED.

**ENTERED: 05/19/2020**

Susan E. Cox,
United States Magistrate Judge

7